UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LUREEN MCNEIL,

                        Plaintiff,

                -against-                          **ORDER**
                                                  14 CV 2379 (NGG) (CLP)
NEW YORK STATE OFFICE OF ALCOHOLISM
AND SUBSTANCE ABUSE SERVICES, *et al.*,

                        Defendants.
----------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

On April 11, 2014, plaintiff Laureen McNeil commenced this action against the New York State Office of Alcoholism and Substance Abuse Services ("OASAS"), alleging employment discrimination on the basis of race and retaliation. Presently before the Court are plaintiff's motion to compel discovery, filed December 13, 2018, and defendants' motion to extend plaintiff's deposition, filed December 14, 2018.

I.      Investigation Discovery

On November 17, 2017, plaintiff filed an internal complaint with OASAS against Susan Brandau, a non-supervisory co-worker, raising allegations of discrimination and retaliation similar to the ones raised in plaintiff's Second Amended Complaint filed July 26, 2017. OASAS commenced an internal investigation into plaintiff's claims against Ms. Brandau, and plaintiff has sought discovery into this internal investigation. Specifically, plaintiff seeks to review the report prepared by the Affirmative Action Officer, Nichole Watson, and any report prepared by the new Affirmative Action Officer, Grace Hastings, who sent a letter to plaintiff telling her that her claims were unsubstantiated. (Id. at 3).

By Order dated July 3, 2018, this Court directed the defendants to notify the Court when the internal investigation had been completed and to inform the Court of defendants' position with respect to plaintiff's request for discovery into the internal investigation.

On November 5, 2018, defendants notified the Court that the internal investigation had been completed and that OASAS had determined that the allegations against Ms. Brandau were unsubstantiated. Defendants also take the position in their letter that all draft and final investigation reports prepared during the course of the internal investigation are protected from disclosure pursuant to the attorney client privilege, the deliberative process privilege, and are work product. (Defs.' Nov. 5, 2018 Ltr.).[1]

According to defendants' November 5, 2018 letter, the investigation reports are confidential reports prepared by OASAS' affirmative action officers requesting legal advice and review by OASAS' counsel and thus are confidential communications between agency clients and counsel, protected by the attorney client privilege because they were generated specifically for the purpose of obtaining legal advice. (Id. at 2 (citing In re Cnty of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (holding that the privilege applies to "a communication between client and counsel that . . . was intended to be and was in fact kept confidential, and . . . was made for the purpose of obtaining or providing advice"))).

Defendants also assert that the reports are protected under the deliberative process privilege doctrine. (Id. at 3). The deliberative process privilege protects government agencies from having to disclose inter or intra-agency documents that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150

---

[1] Citations to "Defs.' Nov. 5, 2018 Ltr." refer to defendants' letter, filed November 5, 2018, ECF No. 130.

2

(1975). This privilege covers not only reports but also draft documents, proposals, recommendations, and subjective documents that reflect the opinions of the writer, recognizing the need to allow government officials to communicate their views candidly without fear of disclosure to encourage "open and frank discussion" within the government. Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8-9 (2001). Defendants assert that the investigation reports at issue here are "predecisional intra-agency documents," prepared to assist OASAS in determining what action to take in response to plaintiff's internal complaints. (Defs.' Nov. 5, 2018 Ltr at 3). Defendants also contend that the reports are "deliberative" because they are related to the process by which OASAS investigated and determined plaintiff's allegations. (Id.)

Finally, defendants contend that the reports and notes are protected from disclosure as attorney work product because they were prepared in response to plaintiff's claims in this litigation, which had been pending for four years prior to the internal investigation. (Id.) As such they were prepared for the purpose of litigation at the direction of OASAS' counsel. (Id.)

Plaintiff has not submitted any arguments in opposition to defendants' privilege arguments. Instead of disputing that the documents are privileged, plaintiff argues that because defendants asserted a Faragher/Ellerth defense in their Answer to the Second Amended Complaint, plaintiff is entitled to these documents. (See Ans.[2] ¶ 213 (asserting that defendants "exercised reasonable care to prevent and correct promptly any harassing behavior and plaintiff failed to take advantage of preventative or corrective opportunities provided by [State]

---

[2] Citations to "Ans." refer to defendants' Answer to the Second Amended Complaint, filed September 11, 2017, ECF No. 92.

3

Defendants")). See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

Defendants, however, dispute that they have in fact raised a Faragher/Ellerth defense to the issues surrounding the November 2017 internal complaint or OASAS' investigation of that complaint. (Defs.' Dec. 11, 2018 Ltr at 2).[3] They contend that the defense was raised in response to plaintiff's claims that she asserted in the Second Amended Complaint which was filed on July 26, 2017, and which did not contain allegations pertaining to the November 2017 internal complaint. (Id.) Defendants further argue that even if the plaintiff were permitted to amend her complaint to add claims based on the events surrounding the November 2017 internal complaint, defendants would not raise a Faragher/Ellerth defense. (Id. at 3). Instead, defendants assert that the allegations raised in the November 2017 complaint are without merit. (Id.)

Having considered the arguments raised by the parties, the Court agrees that the reports and notes relating to this internal investigation into plaintiff's complaints are clearly work product and protected by attorney client privilege as well since they appear to have been prepared at the direction of OASAS attorneys, during the course of this employment discrimination case, for the purpose of obtaining the necessary information that would allow counsel to provide advice to OASAS as to how to proceed with respect to plaintiff's internal complaint against her co-worker.

Accordingly, plaintiff's request for production of the reports and notes of the internal investigation is denied.

---

[3] Citations to "Defs.' Dec. 11, 2017 Ltr." refer to defendants' letter, filed December 11, 2018, ECF No. 134.

4

II. Deposition Transcripts

Plaintiff moved to compel production of the reports and the depositions taken in the Sandy Liburd case.[4] (Pl.'s Dec. 13, 2018 Mot. at 1).[5] Plaintiff alleges that during 2011, she was removed from her position and interrogated for malfeasance. (Id.) She further claims that she was deposed in the Liburd case, which raised similar charges and issues and involved many of the same individuals implicated in plaintiff's case. (Id.) Thus, plaintiff argues that she needs the deposition transcripts of Sandy Liburd, the former Affirmative Action Officer, Loretta Poole, and Mary Ann DiChristopher, who was also deposed in the Liburd case. In addition, plaintiff seeks her own deposition transcript from the Liburd case. (Id. at 2).

Defendants contend that the Liburd action involved claims and circumstances completely different from those involved in plaintiff's case. (Defs.' Dec. 11, 2018 Ltr at 1). Defendants contend that Ms. Liburd held a different position from plaintiff in a different bureau; she claimed that she was not promoted and that OASAS' affirmative action efforts resulted in an insufficient number of minority employees being promoted. (Id.) By contrast, defendants explain that plaintiff's claims stem from the restructuring of her job responsibilities after she was determined to have mismanaged a federal grant. (Id. at 1-2). Defendants further state that they would be willing to provide the Court with copies of the deposition transcripts in the Liburd case for *in camera* review. (Defs.' 8/6/18 Ltr. at 2).[6]

In arguing that she needs the deposition transcripts, plaintiff concedes that she is "unsure of [the] value of deposing [Liburd] without reading her deposition to see if she has testimony that

---

[4] Defendants state that the "Sandy Liburd case" refers to the matter of Liburd v. OASAD, et al., Index No. 11/111414 (Sup. Ct. N.Y. Cnty) ("Liburd case" or "Liburd action"). (Defs.' Dec. 11, 2018 Ltr at 1).
[5] Citations to "Pl.'s Dec. 13, 2018 Mot." refer to plaintiff's Motion to Compel, filed December 13, 2018, ECF No. 135.
[6] Citations to "Defs.' 8/6/18 Ltr." refer to defendants letter, filed August 6, 2018, ECF No. 126.

would be of value to [plaintiff's] case." (Pl.'s Dec. 13, 2018 Mot. at 2). She suggests that Ms. Liburd, who allegedly deposed plaintiff, may have discussed information related to the plaintiff. (Id.) Her professed reason for seeing DiChristopher's deposition transcript is that DiChristopher "may have been asked questions about plaintiff," "may have seen the Liburd depositions" and the attorneys for defendants "may have seen them as well," putting plaintiff at an unfair disadvantage. (Id.) As for Ms. Poole, plaintiff believes she was deposed by Ms. Liburd, and her testimony would be relevant in that she protested the memo relating to plaintiff that was circulated within OASAS. (Id.) Finally, plaintiff seeks to see her own deposition transcript in the Liburd matter before being deposed by the Attorney General. (Id.)

Ms. McNeil, as the deponent, is entitled to receive a copy of the transcript of her own deposition upon request. Fed. R. Civ. P. 30(f)(3). The Court therefore Orders that defendants provide Ms. McNeil a copy of the transcript of her deposition in the Liburd case by January 25, 2019. As for the deposition transcripts of Ms. Liburd, Ms. DiChristopher, and Ms. Poole, the Court Orders that by January 25, 2019 defendants provide copies of the transcripts to the Court for *in camera* review to determine if any of the transcripts are relevant to the instant matter.

III.    Extension of Deposition Time Limit

In a letter dated December 14, 2018, defendants seek permission to extend the presumptive seven-hour time limit for plaintiff's deposition to two full seven-hour days. (Defs.' Dec. 14, 2018 Ltr. at 1). Defendants claim that "given the multitude of claims and issues raised in Plaintiff's 37-page, 192-paragraph complaint and the large volume of documents produced during discovery," they will not have sufficient time to question plaintiff about her wide-ranging allegations against defendants. (Id.)

Plaintiff objects and indicates that she plans to depose Ms. DiChristopher, who authored or is the subject of approximately 1400 notes or memos relating to plaintiff, and she intends to complete that deposition within the presumptive seven-hour limit. (Pl.'s Dec. 17, 2018 Ltr. at 1). Plaintiff also notes that she suffers from Post-Traumatic Stress Disorder and that during a conference call with defendants on December 13, 2018, defendants' counsel was "combative and hostile," triggering "one of [her] major . . . trauma symptoms." (Id.) Thus, she requests that the deposition be limited to one seven-hour day. (Id.)

At this time, the Court reserves decision on whether defendants will be allowed additional time beyond the presumptive seven hours. Defendants are cautioned to be focused in their questioning and plaintiff is cautioned to be as responsive as possible to the questioning. If, at the conclusion of the initial seven hours, defendants can show good cause as to why they could not complete the deposition in the time allotted, the Court will consider whether to grant their request for more time, based upon a review of the transcript and a showing of the reasons certain topics were not covered.

IV. Deposition Scheduling

Defendants' December 14, 2018 letter also raises a concern about the timing of plaintiff's deposition. (Defs.' Dec. 14, 2018 Ltr at 1-2). The Court directed the parties to begin depositions by January 17, 2019. (Nov. 8, 2018 Order).[7] According to defendants, when they contacted plaintiff to suggest taking the deposition during the week of January 14, 2019, she indicated she was unavailable, but provided no reason. (Defs.' Dec. 14, 2018 Ltr at 2).

In response, plaintiff indicates that she would like to be deposed last to give her the opportunity to question some of the witnesses and determine "why these things were continuing

---

[7] Citations to "Nov. 8, 2018 Order" refer to the Order of this Court, dated November 8, 2018.

to happen." (Pl.'s Dec. 17, 2018 Ltr at 1). Plaintiff indicates that she would be available to be deposed on January 30 or 31, 2019, but she would like to depose some witnesses first. (Id. at 2). She does not indicate who she seeks to depose, nor has she served a notice of deposition as to these individuals. (Defs.' Dec. 14, 2018 Ltr at 2).

Given the Court's rulings concerning the defendants' need to provide plaintiff with her deposition transcript and the need to provide the remaining deposition transcripts to the Court for *in camera* review, the Court sets the following deposition schedule: 1) defendants are to provide plaintiff with a copy of her deposition transcript by January 25, 2019; 2) defendants are to provide the Court with deposition transcripts of Ms. Liburd, Ms. DiChristopher, and Ms. Poole by January 25, 2019; 3) plaintiff is to conduct one deposition by February 22, 2019; 4) plaintiff's deposition to be completed by March 8, 2019.

In light of the above, the Status Conference currently scheduled for January 23, 2019 is rescheduled for March 11, 2019 at 12:30 p.m.

The Clerk is directed to send copies of this Memorandum and Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 17, 2019

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York